*E-Filed 07/30/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORI LEV,

        Plaintiff,

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.
_____/

No. C 09-05074 RS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff, Ori Lev, challenges the final decision of the Social Security Commissioner, denying his request for Title II disability benefits. Lev filed a Motion for Summary Judgment, asking the Court to reverse the ALJ's findings and remand for the benefits he claims are owed. In the alternative, Lev asks the Court to remand for further proceedings. The Commissioner filed a response and a Cross Motion for Summary Judgment. Substantial evidence supports the ALJ's opinion, there is no indication the ALJ committed reversible error, and the agency's decision should therefore be affirmed.

## II. FACTS AND PROCEDURAL HISTORY

In December of 2000, Lev filed a claim for disability benefits based on depression, arthritic back and neck pain, and a heart condition. (AR 72.) At the time of his application, Lev was fifty-four years old. *Id*. He worked in the United States between 1970 and 1987, and resided in this country from December 19, 1969 through September 9, 1991. (AR 83-84, 78.) Currently, Lev lives in Israel and receives disability benefits through the Israeli social security system. (AR 73, 78.)

Lev contends his depression began after he experienced financial hardship and marital problems in 1989. (AR 22.) In December of 1990, he began receiving treatment from clinical psychologist, David N. Max, Ph.D. (AR 22, 279.) In a letter dated December 11, 2007, Dr. Max summarized the bi-weekly counseling sessions with Lev that took place between December 1990 and August 1991. (AR 22, 279-80.) Dr. Max stated that Lev exhibited suicidal tendencies during the winter and spring of 1991, was emotionally fragile, and diagnosable with a major depressive disorder. (AR 22, 280.)

On August 4, 1991, Lev received treatment at a Kaiser Permanente emergency room because he was unable to sleep. (AR 22, 150.) The emergency room record indicates that Lev was agitated and in need of rest. (AR 150.) That record also represents that Lev denied thoughts of suicide and seemed to express a positive attitude about the future. *Id*. In his testimony before the ALJ, Lev stated that this document did not reflect his true mental condition at the time. (AR 23, 329.) Lev explained that he made these false statements in order to avoid hospitalization. *Id*.

Shortly after the emergency room visit, Lev moved to Israel. (AR 136, 329-30.) In September of 1991, he began receiving treatment from Rouben Bouba, M.D. (AR 22.) Dr. Bouba provided a letter dated December 24, 1991, which noted that plaintiff suffered from asthma, depression, insomnia, hypertension, and palpitations. (AR 22, 183.) Dr. Bouba also provided a letter dated January 30, 2001, stating that he treated Lev in Israel from September 1991 to December 1994 for severe depression. (AR 22, 224.) In 1999, Lev received treatment from Yael Elazar, M.D., who diagnosed him with a depressive disorder. (AR 22.) Dr. Elazar provided a letter dated June 7, 2008, indicating that Lev suffered from long-standing major depressive and anxiety disorders which began when he lived in the United States. (AR 22, 285.)

The record also contains statements from lay witnesses concerning Lev's condition during this time period. Plaintiff's daughter, Mikahl M. Lev, M.D., provided a statement about her father's condition, dated April 15, 2008. (AR 23, 133-35.) In this letter, Ms. Lev claims plaintiff's financial and marital problems began in 1989. (AR 23, 133-34.) Plaintiff's sister, Lili Weisberger, provided a statement on April 25, 2008. (AR 23, 136-37.) Ms. Weisberger recalls plaintiff's arrival in Israel in September of 1991. (AR 23, 136.) She remembers Lev acting agitated, enraged, hyperactive, and suicidal during that time period. (AR 23, 136-37.)

Lev was insured for Title II disability benefits through December 31, 1991. (AR 83.) He alleged an onset date of disability of January, 1989. (AR 86). In a pre-hearing brief to the ALJ, Lev's attorney waived consideration of any physical impairments, and chose only to focus on Lev's depression claim. (AR 23, 138.) At a hearing on October 21, 2008, Lev testified about his disability via telephone. (AR 19, 315-60.) On January 20, 2009, the ALJ issued a decision denying Lev's claim. (AR 19-24.) The ALJ determined that Lev met the insured status requirement on December 31, 1991, which was his date last insured ("DLI"). (AR 21.) Next, the ALJ engaged in a five step analysis for determining disability, as outlined in 20 CFR § 404.1520(a)(4). (AR 21.)

In step one, the ALJ determined that there was no evidence Lev engaged in substantially gainful activity from his alleged onset date of January 2, 1989, through his DLI on December 31, 1991. (AR 21.) In step two, the ALJ found there were no medical signs or laboratory findings to substantiate the existence of a medically determinable "severe" impairment through Lev's DLI. (AR 22.) In reaching this conclusion, the ALJ discussed the opinions of four physicians: Dr. Max, Dr. Bouba, Dr. Elazar, and Dr. Schreiber. (AR 22.) The ALJ concluded that the evidence on the record generated on or before the claimant's DLI failed to establish the existence of any severe medically determinable impairment that significantly limited Lev's ability to work. (AR 23.) The ALJ referenced the December 1991 letter from Dr. Bouba, which listed depression as one of the claimant's impairments. *Id*. The ALJ found that the letter did not address clinical or medical signs or findings sufficient to support a diagnosis of "severe" depression consistent with SSR 96-4p. *Id*.

No. C 09-05074 RS
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

3

1  The ALJ also considered the letters concerning Lev's condition from Dr. Max and Dr. Elazer. (AR 22, 24.) The ALJ concluded that these recently generated records, which purport retrospectively to assess Lev's condition on or before the DLI, also failed to establish a "severe" impairment. (AR 24.) The gaps in time and lack of contemporaneous medical records weighed heavily in the ALJ's determination. *Id*. Specifically, the ALJ found that the recollections of medical providers ten to eighteen years after the critical events could not substitute for documentary evidence of an impairment during the relevant time. *Id*. The ALJ also recognized that even assuming a severe impairment was established on or before the DLI, there was insufficient evidence to show it lasted for at least twelve continuous months as required by 20 CFR § 404.1509. *Id*. In evaluating the severity of Lev's impairment, the ALJ discussed plaintiff's testimony about his visit to the emergency room in August of 1991. (AR 23.) The Kaiser emergency room record indicates that Lev denied suicidal thoughts when he was in the emergency room. (AR 23, 150.) The ALJ concluded that without more persuasive evidence, there was no reason to doubt the validity of the Kaiser record. (AR 23-24.)

In sum, the ALJ determined that Lev's impairment was not "severe," and that Lev was not disabled at any time from the alleged onset date through the DLI. (AR 24.) Accordingly, Lev's request for disability benefits was denied. *Id*. The Social Security Administration then denied Lev's request for review of the ALJ's decision, which made that opinion final. (AR 6.) Lev filed a complaint for judicial review on October 23, 2009. He then filed this Motion for Summary Judgment on March 19, 2010. Defendants duly opposed that motion and filed its own Cross Motion for Summary Judgment.

### III. STANDARD OF REVIEW

A. <u>Standard for Reviewing the Commissioner's Decision</u>

Section 405(g) of the United States Code, chapter 42, establishes the standard of review of the Social Security Commissioner's decision to deny benefits. The Commissioner's finding may be reversed if it is not supported by substantial evidence, or if it is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In this context, substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. It requires more than a scintilla, but less than a preponderance of evidence. *Id*. To determine whether substantial evidence supports the Commissioner's decision, the Court reviews the administrative record as a whole, considering adverse as well as supporting evidence. *Id*. *See also Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1992).

B.  Standard for Determining Disability

A person is "disabled" for purposes of receiving Social Security benefits if he or she is unable to engage in a substantially gainful activity due to a physical or mental impairment that has lasted for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Social Security disability cases are evaluated under a five-step test. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920 (a)(4)(ii). If the ALJ concludes the claimant does not have a "severe" impairment, the claimant is not "disabled" and the claim is denied. *Id*. If the claimant does have a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. 20 CFR Part 404, subpart P, Appendix 1; 20 CFR § 404.1520(a)(4)(iii). In the fourth step, the Commissioner must determine whether the claimant has sufficient "residual functional capacity" to perform his or her past work. 20 CFR § 404.1520(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied. *Id*. The claimant has the burden of proving that he or she is unable to perform past relevant work. *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, he or she has presented a prima facie case of disability. *Id*. In the fifth step of the analysis, the burden shifts to the Commissioner to establish that the claimant can perform other substantial gainful work. 20 CFR § 404.1520(a)(4)(v). Otherwise, the claimant will be found disabled. *Id*.

IV.  ANALYSIS

In this case, the ALJ found that Lev was ineligible for benefits at step two of the five step analysis. (AR 22.) In particular, the ALJ concluded that Lev's impairment was not "severe" within the meaning of the statute. Lev claims the ALJ's conclusion is not supported by substantial evidence, and that the ALJ was required to engage in additional procedures before denying benefits.

Upon completion of the administrative proceeding, Lev failed to carry his burden of proving that he had a "severe" medically determinable impairment or combination of impairments prior to the expiration of his insured status on December 31, 1991. 20 CFR § 404.1520(a)(4)(ii). To prove the existence of a medically determinable impairment, Lev needed to provide objective evidence of "medical signs and laboratory findings." 20 CFR § 404.1529(a). The ALJ could also consider statements or reports from the claimant, claimant's treating or non-treating doctors, and others about the claimant's medical history. *Id*. However, an individual's statements alone cannot establish that the claimant is disabled. *Id*. There must be medical signs and laboratory findings which demonstrate that the claimant has a medical impairment supporting a conclusion that the individual is disabled. *Id.*

### A. The ALJ Was Not Required to Call A Medical Expert to Establish Onset Date of Plaintiff's Disability.

Lev argues first that the ALJ committed reversible error by not calling a medical expert to determine the onset date of Lev's depression, pursuant to Social Security Regulation 83-20. Plaintiff insists the ALJ is required to call a medical expert if there was an explicit ALJ finding that an individual is disabled, or substantial evidence that the plaintiff was disabled at some point after the DLI. The Commissioner counters that the ALJ did not actually make an explicit finding of disability. Therefore, defendants argue that the regulation never comes into play in this instance.

Social Security Regulation 83-20 states, "[i]n addition to determining that an individual is disabled, the decision maker must also establish the onset date of disability." SSR 83-20. If evidence in the record does not clearly indicate the onset date, SSR 83-20 requires the ALJ to call a medical expert to help determine the onset date of a disability. *Id*. The Ninth Circuit has determined that SSR 83-20 applies when an ALJ makes a finding that an individual is disabled as of

a particular date, and the issue is whether the disability became debilitating at an earlier date. *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (*citing Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004)).

Here, the ALJ did not make an explicit finding that Lev is currently disabled, contrary to Lev's assertions. The ALJ stated that he had no reason to doubt the recent diagnoses made by Lev's therapists. (AR 24.) However, the Ninth Circuit has held that "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). Therefore, even if the ALJ agreed with Lev's current diagnosis, this does not mean the ALJ found that Lev was currently disabled. Moreover, while it is unclear whether *Sam* requires an ALJ to follow SSR 83-20 if substantial evidence indicates plaintiff was disabled after the DLI, Lev did not provide evidence in support of this claim. *See discussion* pp. 11-12. Accordingly, no need arose to call a medical expert to determine onset date, and the ALJ's failure to employ SSR 83-20 did not constitute a reversible error.

### B. The ALJ Was Not Required To Evaluate Plaintiff's Mental Impairment Under the Special Technique Outlined in 20 CFR § 404.1520a.

Plaintiff also contends that the ALJ was required to complete a Psychiatric Review Technique Form ("PTRF") when determining whether Lev suffered from a "severe" impairment. A PTRF requires the ALJ to conduct an evaluation of each of the claimants symptoms, and fill out a document which reflects the ALJ's assessment. 20 C.F.R. § 404.1520a. Lev relies on *Gutierrez v. Apfel*, for the proposition that if the claimant presents a "colorable claim of mental impairment" the ALJ must complete a PRTF. 199 F.3d 1048, 1051 (9th Cir. 2000). As the Ninth Circuit noted in *Lemke v. Comm'r SSA*, however, *Gutierrez* has been superseded by federal regulation. No. 09-35379, 2010 U.S. App. LEXIS 10419, at *2-3, (9th Cir. May 21, 2010). *See* 20 C.F.R. §§ 404.1520a(e). The Court explained:

> Per the applicable post-2000 Social Security regulations, ALJs are no longer required to attach a specific psychiatric review technique form when evaluating the severity of a claimant's mental impairments; while the present regulations require adjudicators to document their findings using the special technique, they give ALJs greater discretion in deciding how to publish those findings.

NO. C 09-05074 RS
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

7

*Id.* Accordingly, a PRTF is not required so long as the ALJ's opinion incorporates an analysis of claimant's impairments into his or her findings. *Id.*

Listing 12.04 outlines the analysis an ALJ must conduct to determine whether someone is suffering from depressive syndrome. 20 CFR § 404 Appendix I to Subpart B, Listing 12.04. In order to be classified as depressed, a claimant must exhibit at least four of nine listed factors.[1] The ALJ's opinion explicitly discussed two of the factors in Listing 12.04. The ALJ noted that Lev was experiencing sleep disturbance and that he denied thoughts of suicide prior to his DLI. (AR 22, 23.) Two more considerations, appetite disturbance with change of weight, and feelings of guilt or worthlessness appear in the record, but not in the ALJ's opinion. (AR 136.) That is, the ALJ was only presented with evidence that Lev exhibited four out of nine factors in Listing 12.04. He concluded that Lev failed to present evidence of suicidal thoughts, and accordingly, found that Lev did not suffer from severe depression on or prior to his DLI. In support of this appeal, Lev has not presented substantial evidence that he suffered from four of the factors in Listing 12.04. Therefore, the ALJ correctly noted that there was an insufficient basis to conclude that Lev was suffering from depressive syndrome.

C. <u>The ALJ Properly Considered Retrospective Medical Opinions.</u>

Lev argues that while the ALJ gave specific reasons for rejecting the medical opinions of Dr. Bouba, Dr. Max, Dr. Elzar and Dr. Schreiber, those reasons were not legitimate. Defendant disagrees. The Commissioner claims the ALJ provided both specific and legitimate reasons for rejecting the statements of the treating physicians Max and Bouba during the relevant time period. Dr. Elazar and Dr. Schreiber treated plaintiff long after his DLI, and defendants argue the ALJ properly determined that their treatment of Lev was irrelevant.

When an ALJ rejects the opinion of a treating physician, he must set forth specific reasons for doing so. *Reddick v. Charter*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ's decision to

---

[1] The nine symptoms are: 1) Ahedonia or pervasive loss of interest in almost all activities, 2) appetite disturbance with change in weight, 3) sleep disturbance, 4) psychomotor agitation or retardation, 5) decreased energy, 6) feelings of guilt or worthlessness, 7) difficulty concentrating or thinking, 8) thoughts of suicide, 9) hallucinations, delusions, or paranoid thinking. 20 CFR § 404 Appendix I to Subpart B, Listing 12.04.

disregard the opinion of a treating physician, moreover, must be supported by substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ can do this by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his or her interpretation thereof, and making findings. *Reddick*, 157 F.3d at 725. The medical opinion of a treating physician is entitled to special weight. *Embrey*, 849 F.2d at 421. That said, where evidence exists to support more than one rational interpretation of medical evidence, a reviewing court must defer to the ALJ. *Moncada v. Charter*, 60 F.3d 521, 523 (9th Cir. 1995). *See also*, *Drouin*, 966 F.2d at 1258.

Retrospective medical opinions should not be discarded *solely* because they are retrospective. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). *See also Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985). An ALJ can, however, legitimately give less credit or weight to retrospective opinions. *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995); *Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).[2]

Here, the ALJ set forth a detailed and thorough summary of Dr. Bouba and Dr. Max's opinions, but noted that neither of them contained medical evidence of Lev's impairment. (AR 22.) The letters written by Drs. Bouba and Max describe Lev's condition, and give an assessment of his impairment. The letters contain no specific assessment of Lev's functional capacity prior to his DLI. *See Johnson*, 60 F.3d at 1432 (ALJ properly discounted a physician's retrospective opinion because it contained no specific assessment of claimant's functional capacity prior to the DLI). Accordingly, the ALJ's decision to disregard the retrospective opinions was specific and legitimate, and based on failures aside from and in addition to their retrospective nature.

Next, Lev insists the ALJ did not properly consider the opinions of Dr. Elazar and Dr. Schreiber. Dr. Elazar was Lev's treating physician in 1999, but the ALJ did not need to give the

---

[2] Plaintiff cites *Jones v. Charter* in support of his claim that retrospective medical opinions are legitimate forms of evidence which must be considered. 65 F.3d 102 (8th Cir. 1995). Lev's case is distinguishable from *Jones*, because in that case the ALJ did not consider or mention the retrospective medical opinions in the decision. *Id*. at 104. Here, the ALJ summarized all of the medical and lay witness' opinions, but determined that they did not support a claim of "severe" disability.

1  opinion significant weight because she did not treat Lev prior to his DLI.  *See Lester v. Charter*, 81
2  F.3d 821, 830 (9th Cir. 1995) (discussing the differences between treating and examining doctors,
3  and the appropriate weight the opinions should be given).  Dr. Schreiber is considered an examining
4  doctor because he examined, but did not treat Lev, so his opinion is entitled to less weight.  *Id*.

   D.  <u>The ALJ Properly Considered Lay Witnesses Statements.</u>

6  Plaintiff argues that the ALJ committed reversible error in dismissing the statements of two
7  lay witnesses: Mikahl Lev and Lili Weisberger.  In response, defendant asserts that the ALJ
8  discounted lay witness statements for reasons which were germane to each witness as required.
9  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See e.g., Stout v. Comm'r*, 454 F.3d 1050, 1054
10 (9th Cir. 2006) (reversing where an ALJ only made one passing reference to lay witness testimony);
11 *Van Nguyen v. Charter*, 100 F.3d 1462, 1467 (9th Cir. 1996) (reversing where an ALJ did not set
12 forth reasons to discount lay witness testimony).  Here, the ALJ summarized both lay witness'
13 statements in the opinion.  (AR 22.)  Additionally, the ALJ specifically stated that he discounted the
14 lay statements of Lev's family members because they were made eighteen years after they observed
15 him, and could not substitute for documentary evidence of Lev's impairment prior to his DLI.  (AR
16 24.)  While the ALJ could have more specifically expressed his reasons for rejecting the opinion of
17 lay witnesses, this is not reversible error.  *Lewis*, 236 F.3d at 512 (affirming an ALJ's decision to
18 dismiss the testimony of lay witnesses, even though the reasons for dismissal were not discussed in
19 connection to each witness' testimony).  Accordingly, the ALJ properly considered the retrospective
20 statements of the lay witnesses, and articulated reasons for discounting them which were germane to
21 each witness.

   E.  <u>The ALJ Properly Considered Claimant's Testimony.</u>

23 The ALJ found that Lev's testimony about his suicidal state during his emergency room visit
24 in August 1991 was not credible.  (AR 23-24.)  Plaintiff asserts the ALJ contradicted himself by
25 rejecting claimant's testimony, but later stating there was "no reason to doubt the claimant's general
26 credibility."  (AR 24.)  A reviewing court may not second guess an ALJ's credibility determination
27 so long as it represents a reasonable conclusion that is supported by substantial evidence.  *Rollins v.*

1   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  When weighing the claimant's credibility, an ALJ
2   may consider inconsistencies within the claimant's testimony, or inconsistencies between his
3   testimony and his conduct.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  An ALJ's
4   personal observations of the claimant at the hearing may be considered in the overall evaluation of
5   the claimant's credibility.  *Orn v. Astrue*, 495 F.3d 625, 639-40 (9th Cir. 2007).

6   Although Lev testified over the telephone, the ALJ was able to gather enough information to
7   assess his credibility.  (AR 23, 303.)  In his testimony, Lev admitted that he lied to the emergency
8   room doctor during his Kaiser visit.  (AR 329.)  In the opinion, the ALJ acknowledged Lev's
9   explanation of his statements in the emergency room.  (AR 23.)  While the ALJ did not explicitly
10  state he thought Lev was not credible, the ALJ did clearly indicate his reasons for discrediting Lev's
11  testimony.  The inconsistencies between Lev's statements and conduct are sufficient grounds for the
12  ALJ to reject the testimony.  *Light,* 119 F.3d at 792.  The ALJ properly considered Lev's "false
13  statements," and determined that his explanation was insufficient to overcome a written record at the
14  time of the incident.  Therefore, the ALJ did not commit reversible error by giving claimant's
15  testimony diminished credibility.

16  F.  <u>Summary: The ALJ Decision Is Supported By Substantial Evidence.</u>

17  At step two of the five step evaluation process, Lev had the burden of proving he was
18  severely impaired prior to his DLI.  In evaluating Lev's impairment, the ALJ began by pointing out
19  that the relevant period for Lev's disability was between the alleged onset date, January 2, 1989, and
20  the DLI, December 31, 1991.  (AR 19.)  Next, the ALJ discussed all of the evidence presented by
21  the plaintiff, including medical evidence submitted by plaintiff's treating doctors, and statements
22  made by lay witnesses.  (AR 22-23.)  In determining whether Lev was "severely" impaired during
23  the relevant time period, the ALJ looked specifically to evidence generated during that time.  (AR
24  23.)  The only relevant evidence was a December 24, 1991 letter from Dr. Bouba, and a Kaiser
25  Permanente emergency room record.  *Id.*

26  As discussed above, mere diagnosis of an impairment does not establish a disability.  *Young*,
27  911 F.2d at 183.  Dr. Bouba's letter simply states Lev was suffering from "asthenia, depression,

1  insomnia, hypertension and palpitations." (AR 183.) The letter does not contain any information
2  which would conclusively establish a disability, such as medical records or examples of how these
3  ailments affected Lev's behavior. Dr. Bouba's letter may be considered a diagnosis of Lev's
4  impairment, but diagnosis alone is insufficient evidence to support a conclusion that Lev was
5  disabled.

6  Similarly, the emergency room record states Lev needed to sleep, denied suicidal thoughts,
7  and was positive about the future. (AR 150.) The emergency room record also did not establish
8  that Lev was suffering from severe depression. Rather, this record reveals Lev suffered from a lack
9  of sleep, and needed medication to rest. Accordingly, the ALJ's conclusion that Lev's disability
10 was "non severe" prior to the DLI is corroborated by substantial evidence generated during the
11 relevant time period.

12 In addition, the ALJ considered all of the evidence presented by Lev in making his severity
13 determination. (AR 22-23.) As discussed above, the ALJ determined that the retrospective nature
14 of recently generated medical opinions, and the severe time lapse between the lay witness'
15 observations and statements, weighed heavily in the ALJ's decision. The lack of medical records
16 indicating a severe disability lasting over a twelve month period was detrimental to Lev's claim.
17 Therefore, substantial evidence in the record affirms the ALJ's conclusion that Lev's disability was
18 "non severe" prior to the DLI.

## V.  CONCLUSION

20 The ALJ's decision is supported by substantial evidence in the record. The ALJ did not
21 commit reversible error. For the reasons stated above, plaintiff's Motion for Summary Judgment is
22 DENIED, and defendant's Motion for Summary Judgment is GRANTED.

24 IT IS SO ORDERED.

26 Dated: 07/30/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

NO. C 09-05074 RS
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

12